**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**DAVID VANCE**                                                          **PLAINTIFF**
**ADC #149096**

**v.**                              **No. 5:16-cv-00148 BRW-PSH**

**SHIRLEY HUDSON**                                            **DEFENDANT**


## PROPOSED FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Proposed Findings and Recommendation have been sent to United States District Judge Billy Roy Wilson.  You may file written objections to all or part of this Recommendation.  If you do so, those objections must:  (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation.  By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

### I.  Introduction

Plaintiff David Vance, an inmate in the custody of the Arkansas Department of Correction ("ADC"), filed this *pro se* civil rights complaint against ADC employee Shirley Hudson in both her individual and official capacities.  *See* Doc. No. 2.  Vance seeks injunctive relief and punitive damages for the defendant's alleged violation of his Eighth Amendment right to be free from cruel and unusual punishment.  *Id.* at 8.  Specifically, Vance alleges that Hudson was deliberately indifferent to his medical needs by not allowing him to go inside during yard call and by not calling

for medical help sooner after he passed out in the yard. *Id.* at 5-7. Vance also alleges that Hudson kicked him and pulled on his arm while he was passed out. *Id.* at 6.

Other defendants were previously dismissed from this lawsuit. *See* Doc. Nos. 25 & 30. Before the Court are Hudson's motion for summary judgment, supporting brief, and statement of undisputed material facts (Doc. Nos. 45-47); Vance's response, supporting brief, declaration, and response to Hudson's statement of undisputed material facts (Doc. Nos. 54-57); and Hudson's reply (Doc. No. 58). The statements of facts, and the other pleadings and exhibits in the record, establish that material facts are not in dispute and Hudson is entitled to summary judgment as a matter of law.

## II. Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex v. Catrett*, 477 U.S. 317, 321 (1986). When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party. *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002). The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial. *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672,

675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III. Facts[1]

On the afternoon of July 21, 2015, Hudson was on post on the South Hall Yard of the Cummins Unit where a group of inmates, including Vance, were at yard call. Doc. No. 45-4; Doc. No. 45-2 at 2; Doc. No. 45-1 at 6; Doc. No. 57 at 1. Vance had been outside for between one and two hours playing horseshoes.[2] Doc. No. 45-1 at 8; Doc. No. 57 at 1. Around 3 p.m., shortly before yard call was scheduled to be over, Vance approached Hudson, told her that he was going to fall out, and asked to step inside the door to cool off.[3] Doc. No. 45-4; Doc. No. 45-1 at 6; Doc. No. 57 at 1. Vance told Hudson he had diabetes and high blood pressure. Doc. No. 57 at 1. Hudson instructed Vance that yard call was not yet over, and she instructed him to go drink some water and to sit down. Doc. No. 45-4; Doc. No. 45-1 at 6; Doc. No. 45-5 at 1-2; Doc. No. 57 at 1-2. Inmates on yard call are not permitted to come and go as they please, due to security concerns,

---

[1] These facts are taken from the statements of facts and supporting documents filed by Hudson and Vance. Hudson's statement of facts (Doc. No. 45) is supported by excerpts of Vance's deposition testimony (Doc. No. 45-1); an incident report (Doc. No. 45-2); a portion of Vance's response to interrogatories (Doc. No. 45-3); Hudson's declaration (Doc. No. 45-4); Vance's medical records from the relevant time period (Doc. No. 45-5); the Arkansas Claims Commission decision on Vance's claim (Doc. No. 45-6); an infirmary log (Doc. No. 45-7); the ADC's administrative directive on the use of force (Doc. No. 45-7); and the ADC's administrative directive on obtaining medical attention (Doc. No. 45-8). Vance's statement of facts (Doc. No. 57) is supported many of the same documents as well as several statements by fellow inmates. Vance also filed a separate declaration (Doc. No. 56).

[2] Hudson noted that yard call is for one hour, but acknowledges that Vance was out an hour and a half. Doc. No. 45-4. The length of the yard call is not material to this lawsuit.

[3] Hudson stated that she was the only officer on duty in the yard. Doc. No. 45-4. Vance disputes her statement and states that he initially asked both Hudson and a sergeant Turner whether he could go inside; he states that Turner then left and he asked Hudson again. Doc. No. 57 at 1. Whether Turner was present or not is not material to this lawsuit.

including minimizing the introduction of contraband into the prison.  Doc. No. 45-4.  Inmates are only allowed to enter the building during yard call to use the restroom.  *Id.*

Vance walked away and passed out.  Doc. No. 45-1 at 6; Doc. No. 57 at 2.  Vance does not know whether he fell backward or forward when he passed out.  Doc. No. 57 at 2.  Vance reported occasional dizziness and lightheadedness for several months before the incident at issue here.  Doc. No. 45-5 at 4; Doc. No. 45-1 at 20-21.  Vance had no history of passing out prior to this incident. Doc. No. 45-5 at 3.  Hudson was not aware of Vance's short history of occasional dizziness and lightheadedness.  Doc. No. 45-4.

After Vance walked away, Hudson noticed a group of inmates gathered around, and she ran over and saw that Vance was on the ground.  Doc. No. 45-4.  Hudson claims she did not touch Vance, and she ran off the inmates who were gathered around him, telling them to go inside because yard call had concluded.  Doc. No. 45-4.  Based on Hudson's training, it was her responsibility to ensure that no one but medical staff touched an inmate who is unconscious but not in need of immediate life-saving treatment.  Doc. No. 45-4.  Hudson believed that Vance was merely feigning passing out.  Doc. No. 45-4.  Vance testified that he "understand[s] that, because a lot of people does [sic] just try to get over on [the guards], you know."  Doc. No. 45-1 at 10.  He elaborated, "I mean, you see this stuff all the time. I mean, you see how they play the guards. I mean, it's just – there always – this place is full of it."  Doc. No. 45-1 at 10-11.  Even though Hudson believed that Vance was feigning passing out, based on her training, she called for medical staff to respond.  Doc. No. 45-4.

Medical staff received a code green call at 2:58 p.m. to respond to the South Hall Yard. Doc. No. 45-7; Doc. No. 45-5 at 1.  At 2:59 p.m., medical staff responded with a wheelchair and

conducted a sternum rub to rouse Vance.[4]  Doc. No. 45-7; Doc. No. 45-5 at 2; Doc. No. 45-1 at 6.

Vance had no awareness of what took place from the time that he passed out until the time that the

medical staff arrived.  Doc. No. 45-1 at 9.

Vance arrived in the infirmary at 3:11 p.m.  Doc. No. 45-5 at 2; Doc. No. 45-7.  Medical

staff placed a cool damp towel and cold packs on Vance's forehead, neck, and wrists, gave him

some water to drink, and administered some blood pressure medication.  Doc. No. 45-5 at 2; Doc.

No. 45-1 at 7.  The medical records state as follows:

> [U]pon arrival inmate lyin on back on ground, this nurse performs
> sternal rub with minimal response.  He is fluttering his eye lids, resp
> even non labored, Nurse Snow on scene and she gets him to respond
> to her.  He opens eyes, he states he does not think he is injured, he
> is assisted to sitting position and he sits there for a minute, he is then
> assisted up to w/c and transported to infirmary.  His skin tones are
> red, (he does have a natural redness on his face from his ADC
> photos).  His vital signs are slightly elevated, he is calm, drinking
> some water, a cool damp towel is placed over his head to help absorb
> the heat.  He is speaking calmly and appropriately to questions.
> Bilateral breath sounds clear, radial pulses palpable, capillary refill
> < 3 sec.  ice packs to axillae.

Doc. No. 45-5 at 2.  The records also indicate Vance had a blood pressure of 160/107, a temperature

of 98 degrees, and a pulse rate of 116 upon arrival to the infirmary.  *Id.*  After about an hour, Vance

left for his barracks with instructions to increase his water intake.  Doc. No. 45-5 at 2; Doc. No.

45-1 at 16-17.  At the time of his release, his blood pressure was 144/98 and his pulse rate was 90.

Doc. No. 45-5 at 2.  Vance declined a wheelchair because he preferred to walk. Doc. No. 45-1 at

17.  According to his medical records, he left on foot without difficulty.  Doc. No. 45-5 at 2.  The

---

[4] Hudson stated in her affidavit that Vance jumped up off of the ground and got into the
wheelchair when the medical staff arrived. Doc. No. 45-4.  It is not clear if she meant this
occurred after the sternum rub or immediately upon the arrival of the medical staff (which would
be inconsistent with the records showing that Vance was revived with a sternum rub).  In either
case, when Vance got up or whether he jumped up is not a material fact in this case.

medical record does not document a knot or injury on the back of Vance's head or any bruising or injury to his arms, nor does it document any complaints by Vance about any such injuries.

Vance went back to work the next day.  Doc. No. 45-1 at 7; Doc. No. 57 at 3.  Vance subsequently noticed a knot on the back of his head that he had not noticed before.  Doc. No. 45-1 at 12.  Vance does not know what caused the knot, but he believes it was related to this incident because it was not there before the incident.  Doc. No. 45-1 at 12-13; Doc. No. 57 at 3.  Vance does not claim that Hudson caused any injury to his head. Doc. No. 45-1 at 14-15.

Vance claims that he was later told by several other inmates that Hudson kicked and pulled on his arm while telling him to get up and stop faking.  Doc. No. 57 at 2.  Vance submitted five statements from other inmates to this effect, three of which are notarized.  Doc. No. 57 at 17-24. Some of these inmates also allege that Hudson did not call the correct code initially or had to be prompted to do so.  *Id.*  Vance also alleges that the next day he was told by an officer that Hudson stood over Vance and did not call a code for help, but that a rover had to call the code.  Doc. No. 56 at 3.  Vance did not submit an affidavit from this officer.  Additionally, although Vance alleges that Hudson kicked him, he has not alleged that he suffered any injury or suffered any bruising. *See* Doc. No. 45-1 at 24 (stating that he had no other injuries).

On December 2, 2015, Vance filed a complaint with the Arkansas Claims Commission. Doc. No. 45-6 at 1; Doc. No. 45-1 at 25.  Vance presented the same facts before the Claims Commission that he is asserting in this lawsuit.  *Id.*  Vance submitted evidence and a hearing was held via video conference.  Doc. No. 45-1 at 16-17.  The Claims Commission issued a decision on the merits of Vance's claim finding liability on the part of the ADC and unanimously awarding Vance $500.00.  Doc. No. 45-6 at 2.  On appeal, the Legislative Subcommittee of the Arkansas

General Assembly reversed the decision, finding that Vance was not entitled to any recovery.  Doc. No. 45-6 at 3.  No reasons were given for the reversal.  *Id.*; Doc. No. 57 at 3.

## IV. Analysis

### A.    Res Judiata/Collateral Estoppel.

Hudson argues that Vance's claims should be dismissed based on the doctrines of res judicata (claim preclusion) and/or collateral estoppel (issue preclusion) because Vance unsuccessfully brought a claim before the Arkansas Claims Commission based on the same facts.  In *Smith v. Johnson*, the Eighth Circuit Court of Appeals held that the claims commission's determination that the ADC was not liable for negligence did not resolve whether or not the defendant in the case before it was deliberately indifferent to the plaintiff's safety in prison.  779 F.3d 867, 871 (2015).  Hudson argues that *Smith v. Johnson* is distinguishable.  However, the undersigned finds that it cannot be distinguished on the limited record before her.  The three pages documenting the claims commission's decision do not show that the same issue was decided by the claims commission even if its decision was based on the same facts.  *See* Doc. No. 45-6.  The evidence in this record shows that Vance's claims commission claim was for personal injury, pain and suffering; that the commission found for Vance; and that the commission's decision was overturned on appeal with no basis for that decision provided.  *Id.*  Accordingly, the undersigned does not recommend that summary judgment be granted in favor of Hudson on the basis of res judicata and/or collateral estoppel.

### B.    Sovereign Immunity

Hudson correctly asserts that Vance's monetary claims against Hudson in her official capacity are barred by sovereign immunity.  A suit against a defendant in his or her official capacity is in essence a suit against the State of Arkansas, and any official capacity claim for monetary damages against that defendant is barred by the doctrine of sovereign immunity.  *Will v. Michigan*

*Department of State Police, et al.*, 491 U.S. 58, 71 (1989)*; Nix v. Norman*, 879 F.2d 429, 431-432 (8th Cir. 1989). Accordingly, the undersigned recommends that Hudson be awarded summary judgment with respect to Vance's official capacity claims for money damages.

### C.    Qualified Immunity

Hudson argues she is entitled to qualified immunity with respect to Vance's individual capacity claims. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person [in their positions] would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Qualified immunity is a question of law and is appropriately resolved on summary judgment. *McClendon v. Story County Sheriff's Office*, 403 F.3d 510, 515 (8th Cir. 2005); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). To determine whether a defendant is entitled to qualified immunity, the Court must consider two questions: (1) do the facts alleged by plaintiff establish a violation of a constitutional or statutory right; and (2) if so, was that right clearly established at the time of the defendant's alleged misconduct. *Wright v. United States*, 813 F.3d 689, 695 (8th Cir. 2015). Courts may exercise "their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

### *Deliberate Indifference to Serious Medical Needs*

The Eighth Amendment's proscription of cruel and unusual punishment obligates prison officials to provide adequate medical care to inmates in their custody. *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). To succeed with an inadequate medical care claim, a plaintiff must allege and prove that: (1) he had objectively serious medical needs; and (2) prison officials subjectively knew of, but deliberately disregarded, those serious medical needs. *Dulany v. Carnahan*, 132 F.3d 1234,

1239 (8th Cir. 1997). Additionally, the Eighth Circuit has held that a "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

The undisputed facts establish that Hudson was not deliberately indifferent to Vance's serious medical needs. When Vance asked Hudson to go inside, Hudson did not know and had no reason to know that Vance had recently complained of dizziness or lightheadedness. Yard call was close to ending, and Hudson told Vance to drink some water and sit down. That response does not show that she was deliberately indifferent to his complaint that he felt like he would pass out.

Once Vance passed out, Hudson responded quickly. Although Vance believes (based on what other inmates and another officer allegedly told him) that Hudson did not immediately call the correct code, the medical records show that she could not have taken long to call it. Hudson says that Vance approached her around 2:55 p.m. Vance also says it was about 3:00 p.m. The records show that medical staff received the code green call at 2:58 p.m. and responded at 2:59 p.m. Vance arrived at the infirmary at 3:11 p.m. Accordingly, there appears to be no significant delay in Hudson's response, and if there was some delay or confusion on her part in calling the correct code, it could only have delayed Vance's medical treatment a very short time.

Finally, Vance has not shown that he suffered any injury as a result of his fall. He claims he later noticed a bump on his head that was not there before but he does not know how he received that bump. Additionally, the medical records do not reference any bump or knot on his head, nor do they reflect that Vance complained about any pain or injury to his head. He also has not provided any evidence that he has continuing medical problems attributed to this bump. Because

a § 1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer some actual injury before he can receive compensation. *See Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008) (citing *Carey v. Piphus*, 435 U.S. 247, 253-55 (1978)). *See also* 42 U.S.C. § 1997e(e) (requiring a prisoner to show an actual physical injury as opposed to mental or emotional injury to sustain a claim for compensatory damages).

For these reasons, the undersigned recommends that Hudson be awarded summary judgment on Vance's deliberate indifference claim.

### *Excessive Force*

Vance also claims that Hudson used excessive force on him by kicking and pulling on his arm while he was passed out. The unnecessary and wanton infliction of pain violates the Eighth Amendment's prohibition on cruel and unusual punishment. "Whenever prison officials stand accused of using excessive physical force in violation of the Eighth Amendment, the 'core judicial inquiry' is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Jones v. Shields*, 207 F.3d 491, 495 (8th Cir. 2000) (quoting *Hudson v. McMillian,* 503 U.S. 1, 6–7 (1992)). "Factors which inform this inquiry include the need for the application of physical force; the relationship between the need for physical force and the amount of force applied; and the extent of injury suffered by the inmate." *Id.* Although a prisoner is not required to prove a significant injury to state an excessive force claim, the extent of injury may be considered in determining the amount of force applied. *See Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010) ("As we stated in *Hudson* [503 U.S. at 9], not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'"). Unless "'it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury.'" *Johnson*

10

*v. Bi-State Justice Ctr./Arkansas Dep't of Corr.*, 12 F.3d 133, 136 (8th Cir. 1993) (citing *Whitley*, 475 U.S. at 322).

The parties dispute the facts related to this claim.  Hudson maintains she did not touch Vance while other inmates have sworn that she kicked him and pulled on his arms while telling him to get up.  Assuming Vance's version is true, there is insufficient evidence to support an inference that Hudson kicked or touched Vance with a malicious or sadistic intent to cause him harm.  If Hudson had kicked Vance or pulled on his arms with an intent to hurt him, he should have had some bruises or soreness as a result.  But Vance complained of no bruising or other injury as a result of Hudson's alleged actions, and testified that he was not injured other than the bump he later noticed on his head and some chest soreness after the sternum rub.  Additionally, the medical records do not document any bruising or other injury to Vance's arms, and do not indicate that Vance complained about any such injury.  Accordingly, even if Hudson kicked or pulled on his arms, the undersigned finds that Hudson did not use excessive force on Vance, and she should therefore be granted summary judgment on this claim.

### D.     State Law Claims

Because Vance's constitutional claims are subject to dismissal, the Court should decline to exercise jurisdiction over his state law claims for assault and battery and medical negligence.  *See Gibson v. Weber*, 433 F.3d 642, 647 (8th Cir. 2006) (Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed).

### IV.  Conclusion

The undersigned recommends that Hudson's motion for summary judgment be granted. Vance's official capacity claims for money damages are barred by the doctrine of sovereign

immunity.  Further, Hudson is entitled to qualified immunity on Vance's individual capacity claims because the undisputed material facts show that Hudson was not deliberately indifferent to Vance's serious medical needs and that she did not use excessive force against Vance.

IT IS THEREFORE RECOMMENDED THAT:

1.    Hudson's motion for summary judgment (Doc. No. 45) be GRANTED, and Vance's claims against her be DISMISSED WITH PREJUDICE.

2.    The Court certify that an *in forma pauperis* appeal taken from the order and judgment dismissing this action is considered frivolous and not in good faith.

DATED this 26th day of January, 2018.

_____
UNITED STATES MAGISTRATE JUDGE